P. W. Doyle *et al.*, plaintiffs in error, *vs.* The Trustees of the African Methodist Church *et al.*, defendants in error.

(Lochrane, Chief Justice, did not preside in this case because he was counsel below.)

1. When there is no error in the ruling of the Court in refusing a new trial and the verdict is right under the law and facts of the case, this Court will not interfere with its discretion in refusing to set it aside.
2. If parties settle a cause by an agreement, part of which is that the sheriff shall sell the property in dispute and divide the proceeds between the parties, and said settlement is made the judgment of the Court, the sale by the sheriff under said agreement is not a judicial sale. (R.)

Sheriff's sales, etc. Before Judge Cole. Bibb Superior Court. October Term, 1870.

The trustees of the Methodist Episcopal Church, South, brought ejectment and proceeding to oust tenants holding over against the trustees of the African Methodist Church, for a vacant lot in Macon. On the 10th of January, 1870, that cause was disposed of by the following consent and order: "The above case is settled on the following terms, to-wit: The lot of land in dispute shall be sold by the sheriff of Bibb county, on the first Tuesday in February, next, after advertising the same once a week, in the daily Telegraph and Messenger, until day of sale; terms of sale cash. After payment of the costs of the above suit and expenses of sale, the balance of the money arising from the sale, be equally divided between the Methodist Episcopal Church, (to be paid to Peter Solomon) and the African Methodist Church, (to be paid to Jefferson Long.)      James Jackson,
Attorney for Methodist Episcopal Church, South.
O. A. Lochrane,
Attorney for African Methodist Church.
Ordered that the above settlement be and the same is hereby made the judgment of the Court." This agreement and

order was entered upon the minutes of the Court, the sheriff advertised the property accordingly, and on the first Tuesday in February, 1870, at the Court-house, within the legal hours of sale, offered the lot for sale, and knocked it down to Doyle at $600 00. Very soon afterwards the sheriff was notified by counsel not to make Doyle a deed, because they intended trying to set said sale aside upon the ground that he had combined with Doyle, and sold said property hurriedly, for less than its value, fraudulently. The sheriff did make Doyle a deed and put him in possession. Meanwhile counsel procured an order from Judge COLE, in Chambers, that the sheriff should stop, but the sheriff had no notice of this till after he had made the deed and put Doyle in possession. The trustees then combined and filed a bill against Doyle and the sheriff to set aside the deed, and to have said land re-sold. They averred that by consent the sheriff knocked off the land for $600 00 to Doyle, when others were trying to bid higher, and when others still were coming to bid, and when the land was worth $2,000 00. Further, they averred that, as this sale was by said consent order, and not under a *fi. fa.*, it had no validity till it should be affirmed by the Court upon a report of the same being made by the sheriff to the Court.

Doyle and the sheriff denied all fraud. At the trial it was shewn that the offering of the land occurred at the usual place of sheriff's sales, at 11½ o'clock, A. M., on said first Tuesday in February, which was an extremely cold and windy day; that the same was made under said consent order, and that Doyle bid it off at $600 00, paid the money, and was put in possession by the sheriff, all on that day. The evidence as to the fairness of the sale was as follows, substantially:

Solomon testified that on said day he went to the Court-house to attend said sale, and went into the City Hall to wait for the sheriff, took up a newspaper and remained there, reading, about thirty minutes. He intended making the land

bring $1,000 00 or $1,500 00, (thinks it worth $1,000 00,) but it was sold by the sheriff while he was in the City Hall. He thinks if the sheriff had "cried" in the usual tone of auctioneers he would have heard him, but he did not hear him.

Long testified that, as one of the trustees of the African Methodist Church, he went to said sale; in going he saw the sheriff reading out of a paper, and before he could get to the Hall the sheriff had knocked off the land to Doyle. He intended making the property bring $1,000 00, which it is worth. He thought the sheriff did not "cry" the property long enough. Before the sale Doyle told Long he would run up the lot to $1,000 00, but on the night before the sale Doyle told him he would not give that much for it.

Two other witnesses, Adams and Blake, testified that when within forty steps of the hall, they saw the sheriff read from a newspaper, and then begin to "cry" the property; they quickened their pace, and just as they reached the steps of the hall, the sheriff knocked off the property. They thought the time between when he read and knocked off the property was not longer than a minute and a half. They admitted that property frequently sold at sheriff's sale for much less than its value, sometimes for not over half its value.

Another witness testified, that when the sheriff came to the hall, he told the persons present, eight or ten, that he was going to sell this land, and asked them to come and bid. He sold from the steps, and these persons were against the side of the house below him, to shield them from the wind. It was blowing very hard and it was difficult to hear. He thought the sale did not occupy as much time as is usual at sheriffs' sales of valuable property; did not remember that but one bid was made. He was asked if he did not ask the sheriff to give him a chance to bid before he knocked off the lot, but he said if he did so, it was in jest, as he had no idea of bidding.

The sheriff testified that he read the advertisement in his

usual tone on such occasions, received a bid of $500 00 from one Murphy, "cried" it; soon after, Doyle bid $600 00, he "cried" that, and called on the bystanders to raise the bid or he would knock off the land. Waiting long enough and observing no disposition to bid higher, he knocked it off to Doyle. He said the sale was fair and without any collusion so far as he knew; he had no interest and never had any in the sale. He spoke loud enough for any of the bystanders to hear him if they had listened. Fifteen or twenty persons were present at the sale. He did not knock off the property sooner because he saw Adams and Blake coming. He did not go to the hall with Doyle and Murphy. He was notified by counsel not to make Doyle a deed; but being advised by Doyle's attorney, and shown the law, he did so upon Doyle's demand. Afterwards, he received the order from the Judge requiring him to stop. He said Adams and Blake were mistaken; that he saw them coming, and when they were where they say they saw him reading the paper, he had been "crying" the property some time.

Doyle testified: He denied all fraud or combination, and said the sale was fair; that the sheriff was reading the advertisement when he (Doyle) came to the hall; it was read loud enough for the crowd to hear; he "cried" the property loud enough to be heard. He confirmed what the sheriff said as to the making of the deed.

Another witness testified that he heard the sheriff distinctly "cry" and "knock down" said land, when sixty or seventy-five yards off, the wind blowing towards the witness.

Another witness testified how far he heard the sheriff, but the distance is fixed only by places mentioned in the record.

The Court charged the jury that said sale was not a judicial sale under execution, and the laws governing judicial sales was not applicable to this sale; that in a sale under said quoted order, the affirmation of the Court was necessary to make it valid, and for want of such affirmation, they should decree said sale to be set aside. Defendant's counsel

requested him to charge the jury to find distinctly as to the issue of fraud made, separately from their finding as to the issue of law, as to setting the deed aside under the foregoing charge. He so instructed the jury. Their verdict was: "We, the jury, set aside the sale and order a new sale of the property. We further find that no fraud was proven, as between Doyle and Martin, the sheriff, and that the deed made to Doyle be rendered up and cancelled." Defendant's counsel then moved to enter a decree in favor of Doyle *non obstante veredicto*, because if he bought *bona fide*, without collusion, the sale as to him is good. The Court overruled the motion and ordered the decree of cancellation to be entered, according to the verdict. This was done. Defendant's counsel moved to set aside so much of the decree as annulled the sale, because it was not authorized by the law and evidence. This was overruled. The said charge and refusals to grant said defendant's motions, are assigned as error.

A. O. BACON; T. J. SIMMONS, for plaintiffs in error. Affirmation by the Court of such sales is unnecessary. It would be in England, but here, not, because Judge cannot pass on facts: 3 Kelly, 169; Arrington vs. Cherry, 10th Georgia Reports; 11th Georgia Reports, 180; 22d, 574; Revised Code, section 4147. If such is practice *this* sale should not be set aside: 2 Dan. Ch. Pr., 1465, *et seq.* Mere inadequacy of price insufficient to set aside sale: 11th Johns, 556; 3 John. Ch., 290; 15 Howard's U. S. R., 60; 1 Clarke, 101; 2 Bland., 629; 1 Bailey's Eq., 14; 1st Greens. Ch., 214; 5 Yerger, 230; 2 McCord's Ch., 158; 2 Paige, 100; 13th Wend., 224; Story's Eq., secs. 244, 245, 246. If this was a judicial sale and Doyle brought *bona fide*, his title is good: 5th Georgia Reports, 400; 11th, 294, 423; 28th, 353; Revised Code, secs. 2586, 2605, 3928, 3931. The motion for judgment *non obstante veredicto* should have been granted: Revised Code, section 4153.

NISBETS & JACKSON; WHITTLE & GUSTIN; B. HILL, for defendants. This sale needed affirmation: 2 Dan. Ch. P., 1454; 1 Lou. & M. Eq. R., 522; 2 Ves. Jr. R., 336. Sales set aside even after affirmation by Court: 2 Dan. Ch. Pr., 1471, and note 1; 1 Lou. & M. Eq. R., 358; 2 B. Munroe's R., 407; Freeman's Ch. R., 270; 2 Paige's Ch. R., 339; 2 McCord's Ch. R., 151; 5 Paige's Ch. R., 97; 9th, 259.

WARNER, Judge.

This was a bill filed by the complainants against the defendants, to set aside a sale of a city lot in the city of Macon, on the ground of alleged fraud between Martin, the sheriff, and the purchaser, and also on the ground of unfairness in making the sale, the inadequacy of price paid for the property, and that the title to the lot did not pass to and vest in the purchaser under said sale. The lot was sold under the following agreement: "The above case (after stating it) is settled on the following terms, (to-wit,) the lot of land in dispute shall be sold by the sheriff of Bibb county, on the first Tuesday in February, next, after advertising the same once a week in the Daily Telegraph and Messenger until day of sale; terms of sale cash. After payment of costs of the above suit, and expenses of sale, the balance of the money arising from the sale to be equally divided between the Methodist Episcopal Church, to be paid to Peter Solomon, and the African Methodist Church, to be paid to Jefferson Long," signed by the counsel of the respective parties. Whereupon, the following order was entered on the minutes of the Superior Court: "November Term, 1869. Ordered that the above *settlement* be and is hereby made the judgment of the Court."

On the trial of the case evidence was introduced on both sides as to the fairness and unfairness of the sale, and as to the conduct of the sheriff and purchaser. The Court charged the jury, "that this was not a judicial sale under execution, and that the law of the State governing judicial sales was

not applicable to said sale; and that in a sale under this order the affirmation by the Court was necessary to make it valid, and there being no such affirmation, in the opinion of the Court, you should set aside the sale and decree the deed to be given up to be cancelled." To which charge the defendants excepted. The jury returned a verdict setting aside the sale, and ordered a new sale of the property, and further found that no fraud was proven between Doyle the purchaser, and Martin, the sheriff, but decreed that the deed made to Doyle be rendered up and cancelled. The defendants moved the Court to set aside the verdict on the ground that it was against law and the evidence in the case, which motion the Court overruled, and the defendants excepted. Admitting there was no fraud proved as between Doyle and the sheriff, there is sufficient evidence in the record, independent of that fact, in relation to the sale of the property, to sustain the verdict. This was not a judicial sale by a sheriff acting in his official capacity as sheriff, even if there had been an order of the Court, ordering him to sell the property, and authorizing him to make a title thereto to the purchaser thereof at such sale. In our judgment there was no order of the Court ordering the property to be sold. There was an agreement of the parties that the property should be sold by the sheriff, and the terms thereof, in settlement of the suit pending between them, and that settlement was made the judgment of the Court, and that is all. The parties by their agreement could not confer upon the sheriff the authority to sell the property and convey title thereto to the purchaser, without an order of the Court to that effect. The judgment of the Court confirming *the settlement* of the parties is one thing, the order and judgment of the Court ordering *a sale* of the property in pursuance of that settlement and conveying a title thereto, is another and very important question, so far as the purchaser's title is concerned under such sale. Whenever the Court, by its judgment, shall order a sale of the property in pursuance of the agreement of

the parties, then it will be the duty of the Court to see to it, that the sale has been made and the title to the property executed in accordance with its order and judgment, especially if any objections shall be made thereto by the parties interested. In view of the facts disclosed by the record, the verdict of the jury setting aside the sale of the city lot was right, and there was no error in the Court in refusing to set the verdict aside.

Let the judgment of the Court below be affirmed.